Henry S. Rhein, Exr. of Henry E. Rhein, Deceased, Appt., v. Rebecca S. Miller, Exrx. of Margaret Rhein, Deceased.

A bequest: "I give and bequeath to my beloved wife, Margaret, all my finished cabinet ware, on hand at the time of my decease, all my certificates of loan of the city of Reading, all my bonds and notes, and all other evidence of indebtedness to me, that I have or may have at the time of my decease; and I also give and bequeath to my said wife, Margaret, all my household furniture and goods, of whatever kind or nature soever, of which I may die possessed of, for her use for and during her natural life, and after her death the same to go to my son," etc.,—is an absolute gift of the cabinet ware, certificates, bonds, notes, and other evidence of indebtedness, to the wife.

(Argued March 1, 1887. Decided March 14, 1887.)

January Term, 1886, No. 371, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Orphans' Court of Berks County dismissing exceptions to an adjudication and awarding distribution. Affirmed.

The facts as they appeared at the audit of the second account of Henry S. Rhein, executor of Henry E. Rhein, deceased, before SCHWARTZ, J., are thus stated in the adjudication:

The decedent died testate in 1873, leaving to survive him as heirs at law: a widow, Margaret Rhein, and three children, namely: Henry S. Rhein, Rebecca S. Miller, who is also executrix of the said widow, now deceased, and Amelia S. Duth.

Testator in his will first explains that he is of sufficient mental capacity to make a will, and that he had therefore provided

NOTE.—In Miller v. Rhein, *ante*, p. 492, the executor of this estate was allowed commissions and a counsel fee, though he had refused to turn over the estate to the proper parties, under the belief that he was entitled to the same.

for his children by transferring to each of them certain of his properties in lieu of their and each of their respective share or shares of their inheritance. After which he proceeds in language as follows:

"Therefore I make this my last will and testament in manner following, to wit: and first, I direct that my body be decently buried and that my funeral be conducted in a manner corresponding with my estate and my situation in life; and I direct that all my just debts and funeral expenses be fully paid and satisfied as soon as conveniently may be after my decease. Item —I give and bequeath to my wife, Margaret, all my finished cabinet ware, on hand at the time of my decease; all my certificates of loan of the city of Reading, all bonds and notes and all other evidences of indebtedness to me that I have or may have at the time of my decease; and I also give and bequeath to my said wife, Margaret, all my household furniture and goods of whatever kind or nature soever, of which I may die possessed of, for her use for and during her natural life, and after her death the same to go to my son, Henry S. Rhein, if he be then living, and if he is not living the same shall go to the heirs of my said wife."

He also gave and devised to his said widow a lot of ground in the city of Reading. The residue of his estate he gave to his son Henry and appointed him executor of his said will and testament.

The fund for distribution before us arose out of the bequests to his widow under the clause of finished cabinet ware, city certificates, bonds, and other evidences of indebtedness.

The principal contention is whether she had an absolute or only a life estate in said legacies.

The chief object of the testator appears to have been to provide for the comfortable support of his widow.

Henry S. Rhein contended that the widow had only a life estate in the bequests. In support of this proposition he further contended that the semicolon used in decedent's will between the words "finished cabinet ware," etc., and the words "household furniture and goods," constituted no part of decedent's will, and that in the construction of wills all punctuation should and must be eliminated. This proposition is not sustained by law. It is, however, true that punctuation must give way, wherever it interferes with a proper and reasonable construction of a will:

but it is also equally true that when it aids, as in this case, to discover the intention of a testator, it takes hold for such purpose. Wigram, Wills, p. 29.

Henry S. Rhein also offered considerable testimony to establish the intent of testator by and through surrounding family circumstances. He proved that he was a bachelor at the execution of the will and at his father's death. He also showed that for a number of years he managed and conducted his father's business and that the estate was mainly accumulated through his industry and management. No express contract is shown to have existed between the father and the son. The son resided with the father and conducted his affairs. Neither the will nor the evidence to establish the circumstances surrounding the family disclosed anything from which to find that the testator intended to give his widow a life estate.

The terms of the will disclose that his sole object was to provide for the comfortable support of his widow. It is written in clear and proper English. The language used in bequeathing the cabinet ware, bonds, etc., is precise and admits of but one interpretation, namely: an absolute gift to her; nor is there anything in the testimony offered from which a contrary intent can be gathered.

A testator's intention must principally be ascertained from the four corners of his will. It will not do for courts to permit a testator's neighbors and acquaintances through bias, interest, or sympathy to make it for him after his death, or to assist the court to find his intentions. Rebecca S. Miller, as executrix of her mother, filed exceptions to the filing of the account, to the allowance of credit for compensation, counsel fees, bond assigned to her and mortgage assigned to her sister, Amelia S. Duth.

The court, in a former proceeding, on the petition of said executrix, awarded her a citation upon the accountant to show cause why he should not pay over to her $8,895.61, it being the balance admitted to be in his hands by his account as filed on March 19, 1874, with all interest in his hands; or, in case the said balance consisted of the original evidences of indebtedness as composed by the inventory on said estate, or of other securities in their place, to assign and transfer the same to the petitioner, and also to show cause why he should not file a detailed statement of said balance, showing where it is deposited if in

cash, or the character, date, and amount of the several securities if the same be invested, together with the names of the persons to whom the same was loaned. Upon the hearing of the above citation the court discovered that it would be almost impossible to get at a correct result so far as the amounts in accountant's hands were concerned. We also did not feel at liberty to go into the inquiry necessary to solve the questions raised by the citation. It, therefore, ordered the filing of an account.

The former account had been filed for more than ten years at the time of granting said citation. During the mother's lifetime all parties treated it as a life estate. The executor retained the corpus of the estate, with the consent and wishes of his mother. He paid her the interest regularly, as often as he received the same. He was for many years the mainstay of the family. It was his energy, industry, and business capacity that created the principal part of the estate in controversy.

The dispute between him and his sisters sprang from his marriage. The sisters, after the dispute between them, submitted the will to counsel for interpretation, and, having learned its import, induced their mother to make her will in their interest. The executrix, after her mother's death, caused said citation to issue, and indirectly endeavored to inquire into matters and things which could not be inquired into under the ordinary practice of law.

Accountant in his second account took credit for $2,000 for services rendered as accountant, and $300 for professional services, both of which are objected to. The accountant in his first account did not ask for credit for compensation or counsel fees, to both of which he was entitled. He should, therefore, be allowed his reasonable commission for settling of the estate, as also reasonable compensation for the service he rendered his mother in the management of her said estate. His proper and ordinary compensation in the settlement of his father's estate is $475, and his services as rendered to his mother in the collection of her interest and the management of her estate is worth $697. . . .

Upon proceeding to the examination of the account, the same was found to be correct, except as modified by the foregoing.

Balance due the estate, as per account filed, $4,763.61.

To which add surcharge on account of compensation $828.00.

Balance in accountant's hands $5,591.61.

For which deduct register's cost for citation and recording report $6.35.

For distribution to estate of Margaret Rhein, deceased, $5,585.26.

Decree nisi accordingly.

To this adjudication exceptions were filed by the accountant, which specified the action of the court in not dismissing the citation issued upon the petition of Rebecca S. Miller; in ordering and decreeing that the accountant should make and file an account; in deciding that under the will the testator bequeathed to his widow an estate absolute in all his finished cabinet ware on hand at the time of his decease, all his certificates of loan of the city of Reading, all bonds and notes and all other evidences of indebtedness to the testator; in not deciding that by said will said widow was entitled only to the interest during her lifetime of the personal estate above mentioned; in not deciding that by said will testator bequeathed to the accountant all his personal estate absolutely, to take effect after the death of his widow; in not making an order and decree that said Henry S. Rhein was entitled to the balance in his account filed, of $4,763.61, absolutely, etc., and in not allowing the whole amount of the compensation claimed by the accountant as executor.

The court subsequently filed the following opinion:

The question raised by the exceptions of Henry S. Rhein is the construction of the will, whether the clause "for her use for and during her natural life, and after her death the same to go to my son, Henry S. Rhein, if he be living; and if he is not living the same shall go to the heirs of my said wife, share and share alike," relate to and qualify all the bequests made in this item preceding this limitation, viz.: "I give and bequeath to my beloved wife, Margaret, all my finished cabinet ware on hand at the time of my decease, all my certificates of loan of the city of Reading, all bonds and notes and all other evidences of indebtedness to me that I have or may have at the time of my decease; and I also give and bequeath to my said wife, Margaret, all my household furniture and goods of whatever kind or nature soever of which I may die possessed of;" or whether it simply relates to and limits the bequest of the household furniture, made in and by the following clause, viz.: "And I also give and

bequeath to my said wife Margaret all my household furniture and goods of whatever kind and nature soever, of which I may die possessed of."

These two sentences are separated by a semicolon. Each sentence is complete and perfect by itself. Separately read they make sense, the former constituting an absolute bequest and the latter a life estate. Neither is dependent upon the other, to render either intelligible or to get at the meaning and intention of the testator. In both the pronoun representing the testator, the verbs expressing his act and will, and the name of the legatee, are contained. And these two sentences are complete, perfect, intelligible, and expressive of the meaning and the intention of the testator, whether they are separated by a semicolon, period, or comma, or whether punctuation be entirely absent or now eliminated.

Were the pronoun "I" and the verbs "give and bequeath" wanting, so that the second sentence read, "and also to my said wife Margaret all my household," etc.; or were also the name of the legatee not expressed and the sentence read "and also all my household furniture," etc.,—then the second sentence would become a clause and a part of the first sentence and be meaningless without reference to it, and the whole bequest possibly limited to a life estate.

"It is only where the first sentence is complete and the second so imperfect, or *vice versâ,* as not to be intelligible without referring to the first or the one that is perfect in order to supply the defect, that the word 'also' can ever have the meaning of the words 'in like manner' given to it or in causing the one clause to govern and direct the other." Evans v. Knorr, 4 Rawle, 66.

In such case the word "also" is used as a mere copulative. In the will drawn it is evidently used to point out a new bequest. It imports no more than the word "item," which Judge AGNEW says is "an usual word in a will to introduce new distinct matter." Horwitz v. Norris, 60 Pa. 282.

Notwithstanding the able argument for the exceptant in his behalf, and the sympathy for him heretofore expressed, the rules relative to the construction of wills constrain me to leave the adjudication undisturbed.

The exceptions in this behalf are, therefore, dismissed.

All other exceptions, after due consideration, are also dismissed and the decree heretofore made allowed to remain.

This action by the court was assigned as error.

*B. T. Shearer, S. L. Young,* and *F. R. Schell,* for appellant. —Was the bequest of finished cabinet ware, loans, bonds, etc., to Margaret Rhein, the widow, absolute or for life only? The intention of the testator must govern. The whole will must be taken together, and effect given to every part. Provenchere's Appeal, 67 Pa. 466; Schott's Estate, 78 Pa. 40; Dwarr. Stat. 144.

A particular intent must yield to a general, if both cannot consist together. Hitchcock v. Hitchcock, 35 Pa. 393; Doebler's Appeal, 64 Pa. 9.

One part of a will may modify another. A devise or bequest may be changed by a subsequent disposition, so as to convert an absolute estate to a life estate only and *vice versa.* 2 Jarman, Wills, 48, 49; Sheet's Estate, 52 Pa. 263; Shreiner's Appeal, 53 Pa. 106; Zerbe v. Zerbe, 84 Pa. 147; Urich's Appeal, 86 Pa. 386, 27 Am. Rep. 707.

Punctuation is not authoritative in interpretation. 1 Redf. Wills, 434; Arcularius v. Sweet, 25 Barb. 405; Arcularius v. Geisenhainer, 3 Bradf. 64.

Every devise or bequest must have a limitation annexed to it, to show the quantity of estate given. This may be express or implied; but where there is an express limitation there cannot be an implied one. Expression is the exclusion of implication. *Expressum facit cessare tacitum.*

The circumstances of the testator, his family and the amount and character of his property shall be taken into consideration. Dwarr. Stat. 178; 1 Redf. Wills, 503, Prop. V.; Postlethwaite's Appeal, 68 Pa. 477.

Every interpretation that leads to an absurdity ought to be rejected. Dwarr. Stat. 128.

The testator begins his will by declaring that he has conveyed real estate to each of his children, naming them. After this, in the disposing part of the will, the daughters are not mentioned, showing that they were not in his mind when he came to determine who should have the property he then owned. The widow and his son Henry only were mentioned. It is clear, therefore, that he intended that his widow and his son should have all his estate. This is the general intent, and no particular part of the will taken alone must be construed, as the appellee claims, so as to defeat it.

The words "for and during her natural life" apply to the whole bequest preceding those words.

Where a testator divides his will into sections, numerically arranged, and in some instances places the words of limitation at the end of each section, it seems they will be considered as applicable to the several devises contained in that section and not be confined to those in immediate juxtaposition. 2 Jarman, Wills, 74, 75, ed. of 1880.

"And" is a connective conjunction. It signifies that a sentence is to be added to what precedes. The fact that the will was written by a lawyer is important. Sheets's Estate, 52 Pa. 257; Urich's Appeal, 86 Pa. 386, 27 Am. Rep. 707; Zerbe v. Zerbe, 84 Pa. 147.

Written or printed words represent sounds, and thereby convey ideas; punctuation marks do not.

Punctuation is a modern contrivance introduced during the sixteenth and seventeenth centuries. Acts of Congress and of state legislatures are not punctuated.

Punctuation marks are intended to represent or indicate the pauses in the sentences uttered by the speaker.

When the words used are plain and the meaning clear, punctuation is of no assistance and can give no aid in construction. Only in cases where there is an ambiguity, punctuation may aid.

In the interpretation of a will, punctuation may perhaps be resorted to, when no other means can be found of solving an ambiguity; but not in cases where no real ambiguity exists except what punctuation itself creates. A single dot over a comma, so easily inserted by mistake or design and so difficult, if not impossible, in most instances of proof or disproof, can never be allowed thus to overturn the natural meaning of the written words, whether taken by themselves or in connection with the whole instrument. Arcularius v. Sweet, 25 Barb. 403.

The will in our case was dictated by the testator to the lawyer who wrote it. No direction was given as to punctuation. When finished it was read to him. He heard the words only, and he heard these, "for her use for and during her natural life." But the punctuation he did not hear, knew nothing of it, and it forms no part of the expression of his intention.

If that paragraph of the will be read regardless of punctuation, the meaning of the words is plain, clear, free from all ambiguity, and punctuation is not needed to ascertain the intention

of the testator. It was so understood by him, and he intended to give an estate for life only to the widow.

The principle of estoppel applies. The widow construed the will so that after her death Henry should have the whole estate. He had a right to act upon this, to arrange his business and domestic matters accordingly, which no doubt he did, for the orphans' court says: "The dispute between him and his sisters sprang from his marriage." Had he remained single no dispute would have occurred, for then his sisters would have expected to inherit, not only what Henry received from his father, but also what he since earned and accumulated himself. The daughters are bound by the acts of the mother. If she acted so as to be estopped from claiming the principal, they cannot claim it.

Horwitz v. Norris, 60 Pa. 282, has no application to our case. In that case the will was divided into paragraphs, each separate and complete in itself. Each paragraph commences with the word "item." The court says: "Item is the usual word in a will to introduce new matter."

All contained in one item is therefore to be taken together; and none of it considered as new matter. In our case the whole bequest is in one item and the household furniture is not introduced as new matter under a separate item.

*H. D. Green* and *A. G. Green,* for appellee.—The will gives the widow an absolute estate.

This view is consistent with the several rules of construction recognized as applicable to the interpretation of wills. It allows the intention of the testator to govern and to be gathered from the four corners of the will. Provenchere's Appeal, 67 Pa. 463.

It sustains the general intent, which is to provide for the wife. Schott's Estate, 78 Pa. 40; Hitchcock v. Hitchcock, 35 Pa. 393; Doebler's Appeal, 64 Pa. 9.

It takes into account the circumstances surrounding the testator at the time of making the will. Postlethwaite's Appeal, 68 Pa. 477.

It leads to no absurdity, and moreover works no injustice or inequality to Henry S. Rhein, the appellant. And lastly, the construction for which we contend is assisted by the punctuation, without the punctuation producing any ambiguity.

Hawkins, Construction of Wills, p. 8; Arcularius v. Sweet, 25 Barb. 404; Evans v. Knorr, 4 Rawle, 66; Horwitz v. Norris, 60 Pa. 282.

PER CURIAM:·

We think the learned judge gave a correct construction to the will of Henry E. Rhein. It follows that there was no error in decreeing the appellee the sum found to be in the hands of the appellant as executor. He has no just cause to complain of any part of the decree.

Decree affirmed and appeal dismissed, at the costs of the appellant.